# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 01 2015, 9:06 am
CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT MOTHER**

Amy Karozos
Greenwood, Indiana

**ATTORNEY FOR APPELLANT FATHER**

Mark Small
Indianapolis, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Robert Henke
David Corey
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of the Involuntary Termination of Parent-Child Relationship of D.V., L.P.V., and J.M., Minor Children,

T.F. (Mother) and L.V. (Father)

*Appellants-Respondents,*

v.

Indiana Department of Child Services and Owen County CASA

*Appellees-Petitioners.*

July 1, 2015

Court of Appeals Case No. 60A01-1411-JT-496

Appeal from the Owen Circuit Court

The Honorable Erik C. Allen, Special Judge

Trial Court Case Nos.
60C01-1402-JT-012
60C01-1402-JT-013
60C01-1402-JT-014

**Mathias, Judge.**

[1]     T.F. ("Mother") and L.V. ("Father") appeal the order of the Owen Circuit Court terminating their parental rights to their children, L.P.V. and D.V. Mother also appeals the termination of her parental rights to her child, J.M.[1] On appeal, Mother and Father both claim that the evidence was insufficient to support the trial court's decision to terminate their parental rights and that they received ineffective assistance of counsel.

[2]     We affirm.

## Facts and Procedural History

[3]     On March 18, 2010, DCS received a report that Mother and newly born D.V. had both tested positive at the hospital for marijuana following D.V.'s birth. DCS received another report on May 5, 2010, that Mother and Father were not cooperating with staff at Riley Hospital, where D.V., who was born premature, was hospitalized, and that Mother and Father could not be located to give consent for a medical procedure for D.V. DCS detained D.V. so that it could consent to her medical procedure. On May 19, 2010, DCS initiated a CHINS proceeding for D.V. D.V. was released from the hospital on May 24, 2010, and after spending a week in foster care, was returned to Mother and Father upon authorization by the court.

---

[1] L.V. is not J.M.'s biological father. J.M.'s biological father voluntarily terminated his parental rights to J.M. and is not a party to this appeal.

[4] The trial court dismissed the CHINS action on July 6, 2010, but approved the proposed informal adjustment plan for Mother and Father. The informal adjustment plan required both parents to submit to drug screens, complete substance abuse treatment, and abstain from drug use. Parents' compliance with the informal adjustment plan was sporadic.

[5] On October 1, 2010, Mother and Father both submitted to drug screens and both tested positive for THC. A few days later, on October 6, Mother and Father were arrested on drug charges, and DCS removed D.V. and her siblings, L.P.V. and J.M., and initiated a CHINS case for all three children. The trial court held a fact-finding hearing on February 4, 2011, after which it adjudicated all three children CHINS. The court issued its dispositional order on May 13, 2011, ordering Parents to participate in reunification services. On September 21, 2011, the children were returned to Parents for a trial home visit. Several weeks later, on November 2, 2011, the court ordered the children removed after law enforcement responded to a domestic violence call at Parents' house, and Father was arrested on an outstanding warrant.

[6] DCS filed a petition to terminate Mother and Father's parental rights on February 2, 2012. The trial court denied DCS's petition on April 3, 2013, finding that Mother and Father had made improvements in their circumstances and that DCS failed to prove that the conditions that led to the children's removal would not be remedied and that the continuation of the parent-child relationship would pose a threat to the well-being of the children. Mother's

Supplemental App. p. 8. The children remained in foster care, and the trial court ordered Parents to participate in reunification services.

[7] Approximately two months later, on June 6, 2013, Mother tested positive for marijuana after a drug screen. Father refused to submit to his July 2013 drug screen. On August 5, 2013, while the children were with Parents during an unsupervised visit, Father shoved Mother into D.V., knocking D.V. down. Three days later, during a fight, Father grabbed Mother, pushed her to the ground, stomped on her face, and dragged her down a gravel road.

[8] Father participated in mental health treatment sessions from July 2013 to September 2013, during which he was diagnosed with adjustment disorder with mixed anxiety and depressed mood, intermittent explosive disorder, and cannabis dependence. After September 2013, Father stopped contacting his therapist until November 27, 2013. He stopped meeting his therapist again after January 2014.

[9] On November 5, 2013, the court ordered that Parents' visits be supervised due to the recent domestic violence incidents between Mother and Father, as well as their respective drug screen results. Approximately one week later, Father arrived at DCS's office and demanded to speak with the family case manager, Branan Neeley ("FCM Neeley"), threatening to physically attack him. Father also damaged a glass window in the office. He later stated that his actions were "justified." Tr. pp. 370-71. Then, in January 2014, Father told his therapist that he was going to shoot FCM Neeley in the head and made threats against the

lives of other DCS employees. DCS filed a police report and FCM Neeley was transferred off the case and obtained a protective order against Father.

[10] The trial court held a review hearing on February 6, 2014, and found that Parents had not complied with the reunification plan. DCS filed its second termination petition on February 11, 2014. The trial court held a hearing on DCS's petition on May 7, 2014. Mother and Father both failed to appear, but Mother's counsel was present. Following the hearing, Father again contacted his therapist and made statements threatening to kill people associated with the case if his children were not returned to him.

[11] On May 21, 2014, Father was arrested and charged with Class D felony intimidation for his threats and Class B misdemeanor criminal mischief for the damage he caused to the window at the DCS office. During his post-arrest interview with an Indiana State Police investigator, Father proudly described himself as "very violent" and as a drug dealer and gang-banger. Tr. pp. 188-89. He also admitted that he had been smoking spice and snorting heroin for the preceding seven days.

[12] On May 28, 2014, the presiding judge of the trial court recused herself, and a special judge was appointed. The trial court held a new termination hearing on July 22, 23, and 31, 2014. Father was incarcerated at the time but appeared in person and by counsel. Mother and her counsel also appeared. The trial court issued an order terminating Mother and Father's parental rights on October 17, 2014.

Mother and Father now appeal.

## I. Sufficiency

We review termination of parental rights with great deference. *In re K.S.,* 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.,* 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.,* 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied.*

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children,* 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.,* 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.,* 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied.* A trial court must subordinate the interests of the parents to those of the child, however, when

evaluating the circumstances surrounding a termination. *In re K.S.,* 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because a better home is available for the child, *id.,* but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[17]     To terminate a parent-child relationship in Indiana, the State is required to allege and prove:

> (A) that one (1) of the following is true:
>
>> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
>>
>> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>>
>> (iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 3l-35-2-4(b)(2). The State must prove these allegations by clear and convincing evidence. *In re G.Y.,* 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied.* If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

[18] Clear and convincing evidence need not establish that the continued custody of the parents is wholly inadequate for the child's very survival. *Bester v. Lake County Office of Family & Children,* 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. *Id.* If the court finds that the allegations in a petition are true, the court *shall* terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[19] Mother and Father argue that the evidence presented by DCS does not support the trial court's findings that a reasonable probability exists that the reasons for the children's placement outside their care would not be remedied or that continuation of the parent-child relationship poses a threat to the children's well-being. Mother contends that she never abused her children, was bonded with and affectionate with them, and her lack of contact with the children after

the termination petition was filed was due to financial hardship and inadequate transportation. She also argues that the trial court should not have based its conclusions on any issues or findings that were decided in the prior termination action.

[20] Father argues that the reason for the children's removal was his use of marijuana, and he no longer uses marijuana. He claims that the reason he failed to visit his children after November 2013 was because he believed it was not possible to see his children and he did not want to visit his children while he was angry about the case. He denies any allegations of domestic violence. He contends that his parental rights were terminated because of his poverty, rather than any threat to his children's well-being.

### A. Conditions That Led to Removal of the Children Would Not Be Remedied

[21] When making a determination as to whether a reasonable probability exists that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S.*, 987 N.E.2d at 1156–57. The trial court is also required to consider the parent's habitual patterns of conduct in order to determine the probability of future neglect or deprivation of the child. *Id.* at 1157. The trial court may consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* The trial court may

also consider the services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* DCS is not required to provide evidence ruling out all possibilities of change. *Id.* Instead, it needs to establish only that a "reasonable probability" exists that the parent's behavior will not change. *Id.*

[22] The evidence shows that Mother only sporadically complied with services ordered by the court, even after the first termination petition was denied, that she did not maintain regular contact with her case manager, that she bragged that she could easily avoid drug screens by staying out of contact with DCS, and that she never completed any of the more than ten substance abuse treatment programs in which she was ordered to participate. After visits with her children were ordered to be supervised on November 5, 2013, Mother visited her children only five times. She last spoke with her children by phone in February 2014.

[23] Father also failed to complete many of the services ordered by the court except, unlike Mother, Father completed substance abuse treatment. However, Father admitted to smoking spice and using heroin for several days just before the second termination hearing. Father's violent tendencies grew more serious over the course of the case; he was involved in multiple domestic violence incidents with Mother, and he bragged to police officers that he was a very violent person and a drug dealer. Father visited the children only twice after his visits were ordered to be supervised, with his last visit occurring on February 18, 2014.

FCM Neeley testified that the conditions that led to the children's removal would not be remedied because, during the four years since the children were adjudicated CHINS, Mother and Father had made little progress with their substance abuse problems and, in fact, new problems had arisen in the form of instability and domestic violence.

In light of this evidence, we cannot say that the trial court clearly erred in concluding that a reasonable probability exists that the conditions which led the children's removal would not be remedied.

### B. Continuation of the Parent-Child Relationship Poses a Threat to the Wellbeing of the Children

When reviewing the question of whether continuation of the parent-child relationship poses a threat to the child's well-being, termination is proper when the evidence shows that the emotional and physical development of a child is threatened. *C.A. v. Ind. Dep't of Child Servs.,* 15 N.E.3d 85, 94 (Ind. Ct. App. 2014). A trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired. *Castro v. Ind. Office of Family & Children,* 842 N.E.2d 367, 372 (Ind. Ct. App. 2006).

D.V. was born prematurely, with underdeveloped lungs, and testing positive for THC. She has asthma and requires daily treatments and medications. J.M. has behavioral issues and mood swings. After the children's trial home visits with Parents, J.M. suffered from nightmares related to the domestic violence and

drug abuse he witnessed at his parents' home. He was diagnosed with post-traumatic stress disorder and adjustment disorders with mixed anxiety. His therapist testified about concerns that J.M.'s post-traumatic stress disorder would return if he were returned to his parents' care.

[28] The children's court appointed special advocate testified about her concerns about the impact of the parents' domestic violence on the children as well as the parents' lack of involvement in the children's lives, including their medical appointments and school activities. She emphasized D.V.'s health problems and her need for careful medical care and stability. FCM Neeley noted that the children had been removed from Parents, except for a brief period of trial home visits, for forty-five months, which was nearly all of D.V.'s life, that parents had regressed rather than progressed in addressing their substance abuse problems and lack of stability, and that Parents had not complied with the ordered services. He also noted that the children's foster parents were willing to adopt the children and that DCS's plan for the children was adoption by the foster parents. In light of this evidence, the trial court could reasonably conclude that the continuation of the parent-child relationship posed a threat to the well-being of the children.

[29] Mother also argues that the evidence does not support the trial court's findings that Parents did not complete the services ordered by the court, claiming that they believed their services were closed when the petition to terminate parental rights was filed and that financial hardship and transportation problems prohibited them from completing the services or staying in contact with the

children. This argument, however, amounts to a request that we reweigh the evidence, which we will not do.

## II. Ineffective Assistance of Counsel

[30] Regarding the assistance of counsel in a termination proceeding, the Indiana Supreme Court has held:

> Where parents whose rights were terminated upon trial claim on appeal that their lawyer underperformed, we deem the focus of the inquiry to be whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination. The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

*Baker v. Marion Cnty. Office of Family & Children*, 810 N.E.2d 1035, 1041 (Ind. 2004). Mother and Father both argue that their counsel were ineffective because they did not object to evidence and issues that had been considered by the trial court during the previous termination proceeding on the basis of res judicata.

[31] The doctrine of res judicata operates to preclude the litigation of matters that have already been litigated. *In re Adoption of Baby W.,* 796 N.E.2d 364 (Ind. Ct. App. 2003), *trans. denied.* The principle of res judicata is divided into two branches: claim preclusion and issue preclusion. *Id.* Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Id.* Issue preclusion, also referred to as collateral

estoppel, bars the subsequent relitigation of the same fact or issue where the fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* When, as here, a party argues that the claim preclusion component of *res judicata* applies, four factors must be present, namely: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies. *Marsh v. Paternity of Rodgers by Rodgers,* 659 N.E.2d 171 (Ind. Ct. App. 1995).

[32]   In its order denying the first termination of parental rights petition, the trial court noted that both Mother and Father had "tried at times to comply with services in the face of considerable obstacles and have been successful in completing some services." Mother Appellant's Supplemental App. p. 8. The court also observed that the parents had attempted to maintain their relationships with the children while the children were removed from the home and had also "tried to provide a stable and adequate home for the children" but had "significant difficulty in doing so" due, in part, to criminal charges that were later dismissed. *Id*. The court held that (1) DCS failed to prove that the conditions that resulted in the children's removal will not be remedied and (2) continuation of the parent-child relationship would not pose a threat to the well-being of the children," emphasizing that Mother and Father had

"improved their respective situations" and that the children could remain safely in foster care while the parents "continue[d] to improve their situation." *Id*.

[33] Much of the evidence considered by the trial court in the second termination proceeding related to events that occurred *after* the first termination petition was denied in April 2013, including evidence of domestic violence, continued drug abuse, and lack of contact with the children. Thus, the order was not barred by principles of res judicata.

[34] We further note that the progress or lack of progress made by a parent cannot be measured without examining the conditions that existed at the time a case began and the events that unfolded throughout the pendency of the case. The court must be free to examine all of the circumstances and evidence to arrive at a conclusion as to which outcome will be best for the children. Here, the trial court found in the April 2013 termination case that DCS had not presented clear and convincing evidence that Parents' parental rights should be terminated because Parents' appeared to be attempting to improve their situation. The issue of whether Parents would be successful in their efforts remained open for future review. Mother and Father have not demonstrated how, if at all, their counsels' raising the res judicata argument would have changed the ultimate outcome of the termination hearing. Therefore, we cannot say that Parents' counsels' performance "was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest." *Baker,* 810 N.E.2d at 1041.

## Conclusion

The trial court's conclusion that the conditions that led to the removal of the children would not be remedied was supported by sufficient evidence, as was the trial court's conclusion that the continuation of the parent-child relationship posed a threat to the well-being of the children and that termination of the parent-child relationship was in the best interests of the children. The parents' arguments on appeal are little more than a request that we reweigh the evidence, which we will not do. Furthermore, neither parent demonstrated that they received ineffective assistance of counsel. For all of these reasons, we affirm the order of the trial court terminating both Mother's and Father's parental rights.

Affirmed.

May, J., and Robb, J., concur.